**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

**JOHN A. GOLDEN, JR.,**

**Plaintiff,**

**v.** **Civil Action No. 4:05cv136**

**DENITA GEORGIA "COOKIE" MANLEY,**

**Defendant.**

**ORDER and OPINION**

On April 3, 2006, the court held a hearing with regard to the plaintiff's Motions for Default Judgment and Partial Summary Judgment and the defendant's Motion to Dismiss. As set forth on the record, and described in more detail below, the court **DENIES** the plaintiff's Motions for Default Judgment and Partial Summary Judgment and the defendant's Motion to Dismiss.

## I. Procedural Background

On September 15, 2005, the plaintiff, John A. Golden, Jr., who is defendant's elderly step-father, filed a Complaint against defendant, Denita Georgia "Cookie" Manley, alleging the conversion of more than $148,851.08 from his five Wachovia bank accounts. The plaintiff alleges that the defendant took the money after the plaintiff added the defendant to the accounts as a convenience to help him manage such accounts. On October 28, 2005, the defendant filed a pro se Answer denying the plaintiff's claims and a "Motion to Dismiss, or in the Alternative, to Transfer" claiming that Virginia is an improper venue. Although the defendant filed her Answer and Motion to Dismiss pro se, she has admitted that an attorney in Georgia prepared them for her.

On November 14, 2005, the plaintiff filed a "Motion for Extension to file Opposition to Defendant's Motion to Dismiss", a "Memorandum in Opposition to Defendant's Motion to Dismiss", a "Motion to Amend Complaint", and an Amended Complaint, which is almost identical to the initial Complaint, except for the addition of facts supporting venue in Virginia and defendant's recent criminal indictments from the DeKalb County, Georgia Superior Court. On December 1, 2005, the defendant retained Peter Jankell as counsel. On December 30, 2005, the court entered an Agreed Order granting plaintiff's motion to file an amended complaint and his motion to file a late memorandum in opposition to defendant's motion to dismiss. Accordingly, the court filed the plaintiff's Amended Complaint and directed the defendant to respond to the Amended Complaint within twenty (20) days of the date of its December 30, 2005 Order.

On February 21, 2006, the plaintiff filed several motions: (1) a "Motion for Default Judgment" based on the fact that defendant never responded to the Amended Complaint; (2) a "Motion for Partial Summary Judgment"; and (3) a "Motion to Compel Discovery and for Extension of Discovery Deadline" based on defendant's failure to respond to discovery requests. On March 1, 2006, the defendant filed responses to the plaintiff's motions for default judgment and partial summary judgment, but did not respond to his motion to compel discovery. On March 8, 2006, the plaintiff filed a reply to his motions for default judgment and partial summary judgment.

## II. Factual Background

The plaintiff, John A. Golden, Jr., who is seventy-six years old and a resident of Williamsburg, Virginia, is the step-father of the defendant, Denita Georgia "Cookie" Manley, who is forty-six and a resident of Lithonia, Georgia. The plaintiff was married to the defendant's natural mother, Jean Elizabeth Manley Golden, who died on or about March 10, 2005. The deceased started

living with the plaintiff when the defendant was approximately five years old. When she married the plaintiff, the deceased already had three children, the defendant and two sons. The plaintiff adopted one of Mrs. Golden's sons, but never adopted the defendant or her other brother. The plaintiff and the deceased subsequently had three sons of their own. In her deposition, the defendant reports having an "all right" relationship with the plaintiff when she was growing up. (Def. Dep. at 9 l.12.) The defendant is aware that the plaintiff has been blind in one eye since the age of sixteen, thus, rendering him legally blind.

Approximately two weeks before her mother's death, the defendant came to Virginia to visit her mother and the plaintiff. The defendant stayed at the house with the plaintiff while her mother was in the hospital. After her mother passed away, the defendant stayed with the plaintiff for a couple weeks to help him due to his advanced age and poor eyesight. Although it does not seem that the deceased left a will, she did leave a notarized letter dated August 2000 that directed that certain personal items, such as jewelry, be given to the defendant. (Pl. Mem. for Partial Summ. J., Ex. 11.) The plaintiff honored this letter by opening a safety deposit box for the defendant so that she could retrieve certain items.

The defendant claims that, in addition to the letter, her mother told her on several occasions before she died that the defendant and her natural brothers were the beneficiaries of insurance policies on her mother's life. The defendant further claims that before her mother died, her mother called her and told her to make sure that her brothers got their money from the insurance policies because she, the decedent, knew that the plaintiff "ain't going to do right by ya'll." (Def. Dep. at 45 l.23.) Although, the defendant admits that she never saw an actual insurance policy with her name on it, she claims that shortly after her mother died and the insurance policies "came in", the plaintiff

told her that she and her brothers, not the plaintiff, were the only beneficiaries of the policies. (Id. at 44.) However, the plaintiff actually received the decedent's life insurance proceeds, as reflected on the beneficiary designation of the policy at issue which shows the plaintiff as the primary beneficiary and the defendant as the secondary beneficiary.

On March 18, 2005, approximately one week after the deceased passed away, the plaintiff asked the defendant to drive him to Wachovia bank. Once there, the plaintiff had the defendant sign papers that added the defendant to his Wachovia accounts. The defendant claims that she had no prior discussion with the plaintiff about adding her to the accounts, but that when she arrived at the bank, the plaintiff stated, "I'm going to put you on this account." (Def. Dep. at 32 l.3.) The defendant claims that as she was signing her name on the paperwork, she said, "Whew. All this mine?", to which the plaintiff responded, "Your name on it, ain't it?" (Id. at 31-32.) Furthermore, she claims that the plaintiff told her that she would be getting checks with her name on them from the Wachovia accounts. However, in her deposition, the defendant admits that the plaintiff never explicitly said, "I'm giving you these [accounts], these are yours." (Id.) The plaintiff claims that he only added the defendant to the accounts because of the defendant's prior good relationship with him and because the defendant made material representations to him that she would assist him with his finances without interfering with them.

After the defendant returned to Georgia, the plaintiff continued to manage the bank accounts at issue. However, on July 5, 2005, the defendant withdrew all of the money from the five Wachovia accounts and closed the accounts. The plaintiff claims that the defendant would not accept his phone calls or certified mail after she withdrew the money. Furthermore, he suspects that she went to Las Vegas with $8,000 of the funds and used some of the money for home improvements. The plaintiff

accuses the defendant of conversion and unjust enrichment. Although, the defendant admits to taking the money, she claims that she thought the plaintiff gave her the money when he put her name on the account. Furthermore, she relies on the fact that her mother had always intended her to have the proceeds of the policies. She admits that she used some of the money on home improvements, but gave a portion of it to her brothers and a few friends who have helped her over the years. The defendant claims that she spent the rest of the money, which is somewhere between $70,000.00 to $120,000.00. Yet, she cannot specifically identify where she spent the rest of the money. The defendant denies going to Las Vegas.

The plaintiff asks this court to award him a total of $549,527.82, plus interest and costs, which includes $148,851.08 in funds actually taken, $576.74 in fees and penalties incurred by the plaintiff, $100 in stop payment fees, an additional $50,000 for mental anguish and inconvenience, and $350,000.00 in punitive damages and/or exemplary damages. Furthermore, he asks that this court impose a constructive trust over the funds at issue.

## III. Discussion

The following discussion addresses the defendant's motion to dismiss and the plaintiff's motions for default judgment and partial summary judgment.

### A. Defendant's Motion to Dismiss, or in the Alternative, to Transfer

As stated above, on October 28, 2005, the defendant filed a pro se "Motion to Dismiss, or in the Alternative, to Transfer." However, the defendant has admitted that a Georgia attorney helped her draft this motion, as is obvious from the motion itself. In her motion to dismiss, the defendant claims, pursuant to the doctrine of lex loci delicti, that venue is improper and that the plaintiff can only bring the instant action in Georgia because that is where the alleged tort occurred. However,

the defendant seems to be confusing the doctrine of lex loci delicti, which is used to determine the choice of law that applies in a particular case, with the rules relating to venue.

Title 28, United State Code, section 1391 states:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, **(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated**, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391 (Emphasis added).

In this case, jurisdiction is founded solely on diversity of citizenship: the plaintiff resides in Virginia, the defendant resides in Georgia, and the amount in controversy exceeds $75,000.[1] A substantial part of the events in this case occurred in Virginia: (1) the defendant allegedly convinced the plaintiff to add her to his accounts while she was in Virginia; (2) the defendant was physically in Virginia when she signed her name to such accounts; and (3) the plaintiff suffered the loss in Virginia. Although the defendant had returned to Georgia at the time she actually withdrew the money and closed the accounts, a substantial part of the alleged conduct occurred in Virginia. Thus, Virginia is a proper venue for the instant action.

Furthermore, even under the doctrine of lex loci delicti, the choice of law doctrine on which the defendant mistakenly relies for her venue argument, "the place of the wrong is where the loss is

---

[1]In her initial Answer, in addition to arguing that Virginia is not a proper venue, the defendant states that this court does not have subject matter jurisdiction over the plaintiff's claims. However, the defendant does not mention lack of subject matter in her motion to dismiss. Furthermore, this court does have subject matter jurisdiction based on diversity, as explained above.

sustained." Jordan v. Shaw Indus., 1997 U.S. App. LEXIS 33589 (4th Cir. 1997)(Citations omitted); see also McMillan v. McMillan, 219 Va. 1127, 1128 (1979). Thus, Virginia is the place of the wrong because it is where the plaintiff sustained the loss of his money. Accordingly, the court **DENIES** the defendant's motion to dismiss.

**B. Plaintiff's Motion for Default Judgment**

On February 21, 2006, the plaintiff filed a "Motion for Default Judgment", pursuant to Rule 55 of the Federal Rules of Civil Procedure, based on the defendant's failure to file an Answer to the plaintiff's Amended Complaint. In further support of his request, the plaintiff claims that the defendant has already admitted that she took his funds without legal justification.

The defendant responded to the plaintiff's motion for default judgment by arguing that her initial Answer to the plaintiff's initial Complaint is sufficient to survive default judgment because the plaintiff's Amended Complaint was substantially similar to plaintiff's initial Complaint. In the alternative, the defendant asks this court for leave to file a late Answer, if the court concludes that her initial Answer is insufficient.

Federal Rule of Civil Procedure 55 provides in part: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed R. Civ P. 55. The decision of whether to grant default judgment is committed to the discretion of the district court. United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). However, "[u]nder the law of the Fourth Circuit, default judgments are to be sparingly granted, with consideration to be given to, among other factors, the question of whether a less severe sanction would suffice." Allison v. Eco Tech/Ram-Q Indus., Inc., No. 92-1056, 1993 U.S. App. LEXIS 12493 at * 3 (4th Cir.

1993)(unpublished)(citing Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953-54 (4th Cir. 1987); Moradi, 673 F.2d at 727-28). The Fourth Circuit reviews a "district court's refusal to extend the time in which to answer and its entry of a default judgment for an abuse of discretion." Id. at 3-6 (citing Lolatchy, 816 F.2d at 954). Furthermore, the Fourth Circuit has set forth the following factors to consider in determining whether to set aside a judgment by default: (1) the personal responsibility of the defaulting party; (2) the prejudice to the non-defaulting party by vacating the default judgment; (3) a history of dilatory action by the defaulting party; and (4) the availability of less drastic sanctions. Wong v. Aragona, 1995 U.S. App. LEXIS 19470, 5-6 (4th Cir. 1995)(unpublished)(citing Lolatchy, 816 F.2d at 953 (citing Moradi, 673 F.2d at 728)).

Even though the instant case is not before this court on a motion to vacate a default judgment, Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808 (4th Cir. 1988) is instructive in determining whether to enter a default judgment in the first place. In Augusta Fiberglass Coatings, Inc., the Fourth Circuit addressed the defendant's Rule 60(b) motion to set aside a default judgment for failure to respond to an initial complaint and an amended complaint. After the plaintiff initially filed suit, the parties entered into settlement negotiations and were able to agree to a partial settlement of the case before negotiations broke down. Id. at 810. The plaintiff filed an amended complaint, which took into consideration the partial settlement amount. Id. The defendant's attorney was under the mistaken impression that settlement negotiations had been revived as to the remainder of the claims, and that he did not need to respond to either the initial complaint or the amended complaint. Id. The plaintiff filed a motion for default judgment, which the court granted. Id. The defendant filed a motion to vacate the default judgment. Id. The district court denied the motion. Id.

The Fourth Circuit reversed finding "that the district court erred because it failed to distinguish between the fault of [the defendant's] attorney and the fault, if any, of [the defendant] itself." Id. at 811.  The court explained that the defendant was blameless, and that the failure to file a response to the amended complaint was the fault of its attorney's belief that no response was required and his incorrect assumption that the plaintiff would give the defendant notice before requesting default judgment. Id. at 812. Moreover, the court found that by setting aside the default judgment, the plaintiff would suffer "no disadvantage . . . beyond that suffered by any party which loses a quick victory." Id.  Finally, in deciding to set aside the default judgment, the Fourth Circuit gave great weight to the fact that the defendant had proffered evidence of a meritorious defense.  The court explained that "[t]he underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." Id. (Citation omitted)(Alterations in original). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) (citing Central Operating Co. v. Utility Workers of America, 491 F.2d 245, 252 n.8 (4th Cir. 1974)).

In the instant case, the defendant was pro se until December 1, 2005, the date that she retained Mr. Jankell. Thus, Mr. Jankell was representing the defendant when she received the court's December 30, 2005 Order directing her to file a response to the Amended Complaint. Therefore, it would seem that Mr. Jankell is at least partially to blame for the decision not to file a response. Accordingly, default judgment is not appropriate in this case. Moreover, because the Amended Complaint was almost identical to the initial complaint, except for the addition of a few facts

supporting venue and the evidence of the defendant's indictment, the plaintiff cannot claim that he was prejudiced by the defendant's failure to respond to the Amended Complaint. See Washington National Insurance Co. v. Hendricks, 855 F. Supp. 1542, 1549 (D. Wis. 1994).

Furthermore, although the plaintiff does not have to prove the lack of a meritorious defense for this court to grant default judgment, the defendant has proffered evidence of a potentially meritorious defense. Specifically, the defendant claims that when she went to the bank with the plaintiff to sign her name onto the accounts, she asked the plaintiff, "Whew. All this mine?", to which the plaintiff responded, "Your name on it, ain't it?" (Id. at 31-32.) Although the defendant admits that the plaintiff never specifically stated that he was making a gift to her, the above exchange, if believed, could support the defendant's claim that the plaintiff intended to give her the money in the accounts, even if he did not expressly say so. Based on these facts, and the Fourth Circuit's holding that default judgments should be entered sparingly, the court **DENIES** the plaintiff's motion for default judgment and **ORDERS** the defendant to file a late responsive pleading with this court by Friday, April 7, 2006.

**C. Plaintiff's Motion for Partial Summary Judgment**

At the same time that the plaintiff filed his motion to compel discovery and motion for default judgment, the plaintiff also filed a motion for partial summary judgment. In his motion, the plaintiff claims, pursuant to section 6.1-125.3(A) of the Code of Virginia, that he is entitled to summary judgment because the money in the joint accounts indisputably belongs to him based on the fact that he deposited all of the money in the accounts.

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the non-moving party,

determines that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). The court must assess the evidence and draw all permissible inferences in the non-movant's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-moving party's burden to establish its existence. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986).

The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The evidence that the non-moving party presents to this end must be more than a "mere scintilla." Barwick v. Celotex Corp., 736 F.2d 946, 958-959 (4th Cir. 1984). In order for the non-moving party to survive summary judgment, it must present evidence that is "significantly probative." Celotex Corp., 477 U.S. at 327. If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment must be granted. Anderson, 477 U.S. at 249-250; Matsushita, 475 U.S. at 586 (noting that non-movant must show "more than . . . some metaphysical doubt as to the material facts"). District courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323-25).

Summary judgment does not require that no factual issues be in dispute. To find against the

moving party, the court must find both that the facts in dispute are material and that the disputed issues are genuine. Only "facts that might affect the outcome of the suit under governing law" are material. Anderson, 477 U.S. at 248. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

The plaintiff is proceeding on two grounds: conversion and unjust enrichment. In Virginia, "conversion is any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession." Bader v. Central Fidelity Bank, 245 Va. 286, 289 (1993). To establish a count for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." Allaun v. Scott, 59 Va. Cir. 461, 464 (Va. Cir. Ct. 2002) (Citations Omitted).

Section 6.1-125.3(A) of the Code of Virginia states:

> A joint account belongs, during the lifetimes of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, except that a joint account between persons married to each other shall belong to them equally, and unless, in either case, there is clear and convincing evidence of a different intent.

Va. Code Ann. § 6.1-125.3(A).

In Stone v. Alley, 240 Va.162 (1990), a father filed suit against his daughter when the daughter refused to execute a release for securities that were held as joint tenants. Id. at 163. Based

on section 6.1-125.3 of the Code of Virginia, and the fact that the father had provided all of the funds to purchase the securities, the trial court granted summary judgment in favor of the father. Id. However, the Supreme Court of Virginia reversed based in part on the fact that the trial court erred by refusing to hear evidence of a gift when such evidence was at issue in the pleadings. Id. at 163-64.

Likewise, in the instant case, it would be error for this court to grant partial summary judgment, when evidence exists that, if believed, could establish that the plaintiff made a gift to the defendant. As stated above, the defendant stated in her deposition that while she was at the bank with the plaintiff signing the signature card, she asked, "Whew. All this mine?", to which the plaintiff responded, "Your name on it, ain't it?"(Id. at 31-32.) Although the plaintiff argues that summary judgment is appropriate because the defendant admitted in her deposition that the plaintiff never specifically stated that he was making a gift to her, the above exchange, if believed, could support the defendant's claim that the plaintiff intended to give her the money in the accounts, which would preclude the plaintiff's claims of conversion and unjust enrichment.

In sum, at this time, partial summary judgment is not appropriate in this case because a genuine issue of material fact exists as to whether the defendant intended to make a gift to the defendant when he added her name to his accounts. Accordingly, the court **DENIES** the plaintiff's motion for partial summary judgment.

**IV. Conclusion**

In conclusion, the court **DENIES** the defendant's motion to dismiss because venue is proper in this district, **DENIES** the plaintiff's motion for default judgment because such a sanction is too harsh given the circumstances in the instant case, and **DENIES** the plaintiff's motion for partial summary judgment because a genuine issue of material fact exists. Furthermore, the defendant is

**ORDERED** to file a responsive pleading to the plaintiff's Amended Complaint by Friday, April 7, 2006. Such response shall actually be received by this court and the plaintiff by the above date. In addition, the court **DIRECTS** the parties to contact Magistrate Judge Bradberry so that he may address the plaintiff's "Motion to Compel Discovery and for Extension of Discovery Deadline".

After reviewing the record, the court notes that it has not ruled on defendant's letter motion in which she asks for an extension of time to find a local attorney (Doc. 7), filed on November 14, 2005. However, because the defendant is now represented by Peter Jankell, her motion for extension of time is **MOOT**.

The Clerk is **REQUESTED** to mail copies of this order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 4 , 2006